## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MALLINCKRODT LLC,                    )
MALLINCKRODT INC. and NUVO           )
RESEARCH INC.,                       )
                                     )
             Plaintiffs,             )
                                     )    Civil Action No. _____
        v.                           )
                                     )
APOTEX INC., APOTEX CORP., LUPIN     )
LTD., and LUPIN PHARMACEUTICALS,     )
INC.,                                )
                                     )
             Defendants.             )
                                     )

## COMPLAINT

Plaintiffs Mallinckrodt LLC, Mallinckrodt Inc. and Nuvo Research Inc. (collectively "Plaintiffs"), by their undersigned attorneys, for their Complaint against Defendants Apotex Inc., Apotex Corp. (collectively "Apotex"), Lupin Ltd., and Lupin Pharmaceuticals, Inc. (collectively "Lupin"), herein allege:

## NATURE OF ACTION

1.      This is an action for patent infringement under the patent laws of the United States, Title 35 of the United States Code, arising from Apotex and Lupin filing Abbreviated New Drug Applications ("ANDAs") with the United States Food and Drug Administration ("FDA") seeking approval to market generic versions of Plaintiffs' pharmaceutical product PENNSAID® prior to the expiration of United States Patent No. 8,217,078 ("the '078 patent"), which covers the use of PENNSAID®.

## PARTIES

2.    Plaintiff Mallinckrodt LLC is a limited liability company organized and existing under the laws of the State of Delaware, having a place of business at 675 McDonnell Boulevard, Hazelwood, Missouri 63042-2379.

3.    Plaintiff Mallinckrodt Inc. is a corporation organized and existing under the laws of the State of Delaware, having a place of business at 675 McDonnell Boulevard, Hazelwood, Missouri 63042-2379.

4.    Plaintiff Nuvo Research Inc. is a corporation organized and existing under the laws of Ontario, having a place of business at 7560 Airport Road, Unit 10, Mississauga, Ontario L4T 4H4, Canada.

5.    On information and belief, Defendant Apotex Inc. is a corporation organized and existing under the laws of Ontario, having a principal place of business at 150 Signet Drive, Toronto, Ontario M9L 1T9, Canada.  On information and belief, Apotex Inc., itself and through its wholly owned subsidiary, Apotex Corp., is in the business of making and selling generic pharmaceutical products, which it distributes in the State of Delaware and throughout the United States.  On information and belief, Apotex Inc. has previously submitted to the jurisdiction of this Court and has purposefully availed itself of the jurisdiction of this Court by filing lawsuits and asserting counterclaims in lawsuits filed in the United States District Court for the District of Delaware.

6.    On information and belief, Defendant Apotex Corp. is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 2400 North Commerce Parkway, Suite 400, Weston, Florida 33326.  On information and belief, Apotex Corp., itself and as the agent, wholly-owned subsidiary, and distributor of Apotex Inc., is

2

in the business of making and selling Apotex Inc.'s generic drug products in the State of Delaware and throughout the United States. On information and belief, Apotex Corp. has previously submitted to the jurisdiction of this Court and has purposefully availed itself of the jurisdiction of this Court by filing lawsuits and asserting counterclaims in lawsuits filed in the United States District Court for the District of Delaware.

7.    On information and belief, Defendant Lupin, Ltd. is a corporation organized and existing under the laws of India, having a principal place of business at Laxmi Towers, B Wing, Bandra Kurla Complex, Bandra (East), Mumbai, Maharashta 400 051, India. On information and belief, Lupin Ltd., itself and through its wholly owned subsidiary and agent, Lupin Pharmaceuticals, Inc., is in the business of making and selling generic pharmaceutical products, which it distributes in the State of Delaware and throughout the United States. On information and belief, Lupin Ltd. has previously submitted to jurisdiction in this Court, and has availed itself of jurisdiction of this Court by asserting counterclaims in lawsuits filed in the United States District Court for the District of Delaware.

8.    On information and belief, Defendant Lupin Pharmaceuticals, Inc. is a corporation organized and existing under the laws of the Commonwealth of Virginia, having a principal place of business at 111 South Calvert Street, 21st Floor, Baltimore, Maryland, 21202. On information and belief, Lupin Pharmaceuticals, Inc., itself and as the agent and wholly owned subsidiary of Lupin Ltd., is in the business of making and selling generic pharmaceutical products, which it distributes in the State of Delaware and throughout the United States. On information and belief, Lupin Pharmaceuticals, Inc. has previously submitted to the jurisdiction of this Court, and has availed itself of the jurisdiction of this Court by asserting counterclaims in lawsuits filed in the United States District Court for the District of Delaware.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

10.     This Court has personal jurisdiction over Apotex by virtue of, inter alia, its presence in Delaware, having conducted business in Delaware, having availed itself of the rights and benefits of Delaware law, previously consenting to personal jurisdiction in this Court, availing itself of the jurisdiction of this Court, and having engaged in systemic and continuous contacts with the State of Delaware.

11.     This Court has personal jurisdiction over Lupin by virtue of, inter alia, its presence in Delaware, having conducted business in Delaware, having availed itself of the rights and benefits of Delaware law, previously consenting to personal jurisdiction in this Court, availing itself of the jurisdiction of this Court, and having engaged in systemic and continuous contacts with the State of Delaware.

12.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b).

## PENNSAID®

13.     PENNSAID® was first developed in Canada by Nuvo as a treatment for arthritis, particularly in the knee.

14.     PENNSAID® contains the active ingredient diclofenac, a non-steroidal anti-inflammatory drug ("NSAID") that is formulated with dimethyl sulfoxide ("DMSO"), a powerful solvent.  PENNSAID® is applied multiple times per day by rubbing the solution onto the skin surrounding the knee.  On information and belief, the DMSO in PENNSAID® is an absorption enhancer that allows the diclofenac to absorb through the skin and migrate directly to the source of inflammation.  Because PENNSAID® contains what is understood to be an absorption

4

enhancer, there were early concerns that medications applied to the same area during treatment with PENNSAID® – other NSAIDs, insect repellant, sunscreen, etc. – might also absorb through the skin and present a danger of toxicity.

15.     For this reason, the March 13, 2003 PENNSAID® Canadian Foreign Product Monograph advised physicians at the time to inform patients <u>not</u> to apply any other medication to the treated area during the course of treatment.

16.     This limitation presented problems during treatment with PENNSAID® because the most frequently noted adverse drug reaction in patients treated with PENNSAID® was application site skin irritation and dermatitis.  Application site skin irritation and dermatitis are regularly treated with topical medications, particularly topical medications called corticosteroids, to relieve those conditions.  Because the monograph instructed that topical medications were contraindicated during the course of treatment with PENNSAID®, patients that experienced these adverse reactions either had to discontinue application of PENNSAID® or leave the application site skin irritation and dermatitis untreated.

17.     During drug development, the Nuvo researchers who became the inventors of the '078 patent surprisingly discovered that a second medication can be safely applied to the application site during treatment with PENNSAID® if the treated area is first allowed to dry. The inventors discovered that patients experiencing application site skin irritation and dermatitis can be safely treated with a second topical medication, for example corticosteroids, provided that the area treated with PENNSAID® is allowed to dry before the second topical medication is applied.

18.     In 2009, Mallinckrodt LLC licensed Nuvo's pending patent applications and know-how concerning PENNSAID® patents and sought approval from the FDA to market

5

PENNSAID® in the United States.  The FDA approved Mallinckrodt's New Drug Application No. N020947 ("the PENNSAID® NDA") for diclofenac sodium topical solution 1.5%, under the trade name PENNSAID®, on November 4, 2009.

19.    As a part of the regulatory process for obtaining approval of the PENNSAID® NDA, Mallinckrodt Inc. was required by the FDA to submit a proposed label for the drug.  *See* 21 C.F.R. § 201.56(b).  The label for PENNSAID® instructs physicians and patients, inter alia, about the proper dosage and administration of PENNSAID®.

20.    The label for PENNSAID® indicates, inter alia, that the most common adverse events associated with using diclofenac sodium topical solution are application site reactions. Because of the discovery that a second medication can be safely applied during treatment with PENNSAID® if the area treated with PENNSAID® is allowed to dry, the label for PENNSAID® instructs physicians and patients to apply PENNSAID® to the knee and then allow the area to dry before applying another topical medication.

21.    A physician familiar with the application of topical medications such as PENNSAID® would therefore understand that topical medications used to treat application site reactions would be subject to the label's instruction to allow the treated area to dry before applying another topical medication.

22.    Plaintiffs have educated prescribing physicians regarding the use of PENNSAID®. Physicians are informed that a common side effect of the use of such a diclofenac sodium topical solution 1.5% is application site skin irritation and dermatitis.  Physicians are told that an appropriate method for treating the resulting skin irritation is to wait until the application site is dry after application of PENNSAID® and then apply a topical medication including, but not limited to, a corticosteroid.  Further, on information and belief, it is the standard of care for

6

physicians to treat application site skin irritation and dermatitis by using topical corticosteroid drug products.  One or more claims of the '078 patent cover the method of applying diclofenac sodium topical solution 1.5%, waiting for the treated area to dry, and then applying a second topical medication.

## THE PATENT-IN-SUIT

23.     The Nuvo researchers who discovered that a second medication can be safely applied during treatment with PENNSAID® filed patent applications beginning in March 2009 to protect their inventions.

24.     On July 10, 2012 the United States Patent and Trademark Office issued the '078 patent, entitled "Treatment of Pain with Topical Diclofenac."  The '078 patent was assigned to Nuvo Research Inc. by inventors Jagat Singh, Joseph Zev Shainhouse, Bradley S. Galer, Robert Dominic King-Smith, Lisa Marie Grierson, Maria Burian, Jonathan Wilkin, Edward T. Kisak, and John M. Newsam.  Nuvo Research Inc. granted Mallinckrodt LLC an exclusive license under the '078 patent with respect to, inter alia, topical diclofenac products known as PENNSAID®.  A copy of the '078 patent is attached hereto as Exhibit A.

25.     The '078 patent is listed for PENNSAID® in the Patent and Exclusivity Information Addendum of the FDA's publication *Approved Drug Products with Therapeutic Equivalence Evaluations* ("the Orange Book").  The Patent Use Code listed in the Orange Book for the PENNSAID® product is "Use of topical diclofenac on the knee and a second topical medication on the same knee."

## APOTEX'S ANDA

26.     On information and belief, Apotex submitted ANDA No. 202027 ("the Apotex ANDA") to the FDA, pursuant to 21 U.S.C. § 355(j), seeking approval to market diclofenac

7

sodium topical solution 1.5% before the '078 patent expires.  The diclofenac sodium topical solution described in the Apotex ANDA is herein referred to as the "Apotex Product."

27.     The Apotex ANDA refers to and relies upon the PENNSAID® NDA and contains data that, according to Apotex, demonstrate the bioequivalence of the Apotex Product and PENNSAID®.

28.     On July 13, 2012, Apotex sent to Plaintiffs a letter (the "Apotex Notification") that was received on July 16, 2012, stating that Apotex had included a certification in the Apotex ANDA, pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV), that the '078 patent is invalid or will not be infringed by the commercial manufacture, use, or sale of the Apotex Product (the "Apotex Paragraph IV Certification").

## LUPIN'S ANDA

29.     On information and belief, Lupin submitted ANDA No. 204132 ("the Lupin ANDA") to the FDA, pursuant to 21 U.S.C. § 355(j), seeking approval to market diclofenac sodium topical solution before the '078 patent expires.  The diclofenac sodium topical solution 1.5% product described in the Lupin ANDA is herein referred to as the "Lupin Product."

30.     The Lupin ANDA refers to and relies upon the PENNSAID® NDA and contains data that, according to Lupin, demonstrate the bioequivalence of the Lupin Product and PENNSAID®.

31.     On July 17, 2012, Lupin sent a letter to Plaintiffs (the "Lupin Notification") stating that Lupin had included a certification in the Lupin ANDA, pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV), that the '078 patent is invalid or will not be infringed by the commercial manufacture, use, or sale of the Lupin Product (the "Lupin Paragraph IV Certification").

8

## COUNT I
## APOTEX'S DIRECT INFRINGEMENT OF U.S. PATENT NO. 8,217,078 UNDER
## 35 U.S.C. § 271(e)(2)(A)

32.     Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1-31 of this Complaint.

33.     Apotex has infringed the '078 patent, pursuant to 35 U.S.C. § 271(e)(2)(A), by submitting the Apotex ANDA, by which Apotex seeks approval from the FDA to engage in the commercial manufacture, use, offer to sell, sale, or importation of the Apotex Product prior to the expiration of the '078 patent.

34.     Plaintiffs will be substantially and irreparably harmed if Apotex is not enjoined from infringing the '078 patent.

35.     Plaintiffs have no adequate remedy at law.

## COUNT II
## APOTEX'S INDUCEMENT OF INFRINGEMENT OF U.S. PATENT NO. 8,217,078
## UNDER 35 U.S.C. § 271(b)

36.     Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1-35 of this Complaint.

37.     On information and belief, approval of the Apotex ANDA is substantially likely to result in the commercial use, manufacture, offer for sale and/or sale, or inducement thereof, of a drug product that is marketed and sold for use in a method claimed in one or more claims of the '078 patent, immediately or imminently upon approval of the Apotex ANDA.

38.     The FDA requires Apotex's proposed label for the Apotex Product to contain the same prescribing, dosage and administration, and side effect information as found on the PENNSAID® label. *See* 21 C.F.R. § 314.94(8)(iv).

9

39.    On information and belief, Apotex's proposed label for the Apotex Product will instruct patients and physicians to apply the Apotex Product to the knee and then allow the area to dry before applying another topical medication.   On information and belief, Apotex's proposed label for the Apotex Product will inform patients and physicians that the most common side effect of using a diclofenac sodium topical solution 1.5%, including the Apotex Product, is application site skin irritation.   On information and belief, Apotex is aware that patients and physicians using this product will use another topical medication to treat application site skin irritation and that the application of a second topical medication would be subject to the label's instruction to allow the treated area to dry before application. On information and belief, Apotex will be marketing the Apotex Product with specific intent, and/or with desire, to actively induce, aid and abet infringement of the '078 patent.  Apotex knows or reasonably should know that its proposed conduct will induce infringement of the '078 patent.

40.    On information and belief, Apotex's generic marketing practices include listing generic products on its website and referring physicians and patients to a corresponding brand name product.  On information and belief, Apotex intends to do the same for the Apotex Product, namely Apotex intends to list its generic product and refer patients to Plaintiffs' product, PENNSAID®.  On information and belief, such marketing practices are likely to lead physicians prescribing, and patients using, a generic diclofenac sodium topical solution product to infer that recommendations regarding the use of PENNSAID®, including recommendations relating to the treatment of side effects stemming from the use of PENNSAID®, also apply to the Apotex Product.

41.    On information and belief, the acts of infringement alleged above are and have been deliberate and willful.

10

42.     Plaintiffs will be substantially and irreparably harmed if Apotex is not enjoined from inducing infringement of the '078 patent.

43.     Plaintiffs have no adequate remedy at law.

## COUNT III
## EXCEPTIONAL CASE WITH RESPECT TO APOTEX UNDER 35 U.S.C. § 285

44.     Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1-43 of this Complaint.

45.     This case is an exceptional one, and Plaintiffs are entitled to an award of attorneys' fees under 35 U.S.C. § 285 in light of Apotex's conduct.

## COUNT IV
## LUPIN'S DIRECT INFRINGEMENT OF U.S. PATENT NO. 8,217,078 UNDER
## 35 U.S.C. § 271(e)(2)(A)

46.     Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1-45 of this Complaint.

47.     Lupin has infringed the '078 patent, pursuant to 35 U.S.C. § 271(e)(2)(A), by submitting the Lupin ANDA, by which Lupin seeks approval from the FDA to engage in the commercial manufacture, use, offer to sell, sale, or importation of the Lupin Product prior to the expiration of the '078 patent.

48.     Plaintiffs will be substantially and irreparably harmed if Lupin is not enjoined from infringing the '078 patent.

49.     Plaintiffs have no adequate remedy at law.

## COUNT V
## LUPIN'S INDUCEMENT OF INFRINGEMENT OF U.S. PATENT NO. 8,217,078
## UNDER 35 U.S.C. § 271(b)

50.     Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1-49 of this Complaint.

RLF1 6857737v.1

51.     On information and belief, approval of the Lupin ANDA is substantially likely to result in the commercial use, manufacture, offer for sale and/or sale, or inducement thereof, of a drug product that is marketed and sold for use in a method claimed in one or more claims of the '078 patent, immediately or imminently upon approval of the Lupin ANDA.

52.     The FDA requires Lupin's proposed label for the Lupin Product to contain the same prescribing, dosage and administration, and side effect information as found on the PENNSAID® label. *See* 21 C.F.R. § 314.94(8)(iv).

53.     On information and belief, Lupin's proposed label for the Lupin Product will instruct patients and physicians to apply the Lupin Product to the knee and then allow the area to dry before applying another topical medication.  On information and belief, Lupin's proposed label for the Lupin Product will inform patients and physicians that the most common side effect of using a diclofenac sodium topical solution 1.5%, including the Lupin Product, is application site skin irritation and that the application of a second topical medication would be subject to the label's instruction to allow the treated area to dry before application.  On information and belief, Lupin is aware that patients and physicians using this product will use another topical medication to treat application site skin irritation.

54.     On information and belief, Lupin's generic marketing practices include listing generic products on its website and referring physicians and patients to a corresponding brand-name product.  On information and belief, Lupin intends to do the same for the Lupin Product, namely Lupin intends to list its generic product and refer patients to Plaintiffs' product, PENNSAID®.  On information and belief, such marketing practices are likely to lead physicians prescribing, and patients using, a generic diclofenac sodium topical solution product to infer that recommendations regarding the use of PENNSAID®, including recommendations relating to the

12

treatment of side effects stemming from the use of PENNSAID®, also apply to the Lupin Product.

55.     On information and belief, the acts of infringement alleged above are and have been deliberate and willful.

56.     Plaintiffs will be substantially and irreparably harmed if Lupin is not enjoined from inducing infringement of the '078 patent.

57.     Plaintiffs have no adequate remedy at law.

## COUNT VI
## EXCEPTIONAL CASE WITH RESPECT TO LUPIN UNDER 35 U.S.C. § 285

58.     Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1-57 of this Complaint.

59.     This case is an exceptional one, and Plaintiffs are entitled to an award of attorneys' fees under 35 U.S.C. § 285 in light of Lupin's conduct.

## PRAYER FOR RELIEF

WHEREFORE, Mallinckrodt Inc., Mallinckrodt LLC, and Nuvo Research Inc. pray for a judgment in their favor and against Defendants Apotex Inc., Apotex Corp., Lupin Ltd., and Lupin Pharmaceuticals, Inc., and respectfully request the following relief:

A.      A judgment declaring that Apotex has directly infringed and will induce infringement of U.S. Patent No. 8,217,078;

B.      A judgment pursuant to 35 U.S.C. § 271(e)(4)(B) preliminarily and permanently enjoining Apotex, its officers, agents, servants, and employees, and those persons in active concert or participation with any of them, from manufacturing, using, offering to sell, or selling the Apotex Product within the United States, or importing the Apotex Product into the United States, prior to the expiration date of the '078 patent;

C.      A judgment ordering that pursuant to 45 U.S.C. § 271(e)(4)(A), the effective date of any approval of ANDA No. 202027 under § 505(j) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 355(j)) shall not be earlier than the expiration date of the '078 patent, including any extensions;

D.      If Apotex commercially manufactures, uses, offers to sell, or sells the Apotex Product within the United States, or imports the Apotex Product into the United States, prior to the expiration of the '078 patent, including any extensions, a judgment awarding Plaintiffs monetary relief together with interest;

E.      A judgment declaring that Lupin has directly infringed and will induce infringement of U.S. Patent No. 8,217,078;

F.      A judgment pursuant to 35 U.S.C. § 271(e)(4)(B) preliminarily and permanently enjoining Lupin, its officers, agents, servants, and employees, and those persons in active concert or participation with any of them, from manufacturing, using, offering to sell, or selling the Lupin Product within the United States, or importing the Lupin Product into the United States, prior to the expiration date of the '078 patent;

G.      A judgment ordering that pursuant to 45 U.S.C. § 271(e)(4)(A), the effective date of any approval of ANDA No. 204132 under § 505(j) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 355(j)) shall not be earlier than the expiration date of the '078 patent, including any extensions;

H.      If Lupin commercially manufactures, uses, offers to sell, or sells the Lupin Product within the United States, or imports the Lupin Product into the United States, prior to the expiration of the '078 patent, including any extensions, a judgment awarding Plaintiffs monetary relief together with interest;

I.      Attorneys' fees in this action as an exceptional case pursuant to 35 U.S.C. § 285.

J.      Costs and expenses in this action; and

K.      Such other relief as the Court deems just and proper.

|  |  |
|---|---|
| | */s/ Frederick L. Cottrell, III* |
| OF COUNSEL: | Frederick L. Cottrell, III (#2555) |
| | Jason J. Rawnsley (#5379) |
| Jeffrey J. Toney | RICHARDS, LAYTON & FINGER, P.A. |
| Laura Fahey Fritts | One Rodney Square |
| Jonathan D. Olinger | 920 North King Street |
| KASOWITZ, BENSON, TORRES | Wilmington, Delaware 19801 |
| & FRIEDMAN LLP | (302) 651-7700 |
| Two Midtown Plaza, Suite 1500 | cottrell@rlf.com |
| 1349 West Peachtree Street, N.W. | rawnsley@rlf.com |
| Atlanta, GA 30309 | |
| | *Attorneys for Plaintiffs* |
| Dated: August 30, 2012 | |

RLF1 6857737v.1